## FIRST NAT. BANK & TRUST CO. IN MACON v. ALLEN, Collector of Internal Revenue.

### Civil Action No. 359.

District Court, M. D. Georgia,
Macon Division.
March 13, 1946.

Martin, Martin & Snow, of Macon, Ga. (T. Baldwin Martin and B. Cubbedge

Snow, both of Macon, Ga., of counsel), for plaintiff.

Mills Kitchin, Sp. Asst. to Atty. Gen., and Jno. P. Cowart, U. S. Atty., of Macon, Ga., for defendant.

DAVIS, District Judge.

After the introduction of evidence and argument by counsel for the parties, I made the following findings of fact and conclusions of law:

### Findings of Fact.

1. The facts are found to be as stipulated by the parties.

### Conclusions of Law.

1. The Court has jurisdiction.

2. The life estate sold by Mrs. Ulman was a capital asset and the consideration received therefor did not represent anticipatory income therefrom.

3. The proceeds from such sale were, therefore, not ordinary income and taxable as such, but clearly constituted the price paid for a capital asset.

4. There was a gain of $863.08 upon the sale of the capital asset of which fifty per cent., to-wit, $431.54, should have been taken into account in computing net income under the Revenue Act of 1938, the same having been held for more than twenty-four months.

5. Although the taxpayer failed to include the taxable capital gain in her income, nevertheless, her failure to do so was not fraudulent and any claim for additional taxes, by reason of her failure to include the same in her return, was barred by the applicable statute of limitations at the time the additional assessment was made.

6. The plaintiff is entitled to recover the taxes collected which were attributable to the determination that the proceeds of the sale constituted ordinary income, to-wit, $5,750, with interest thereon at the rate of six per cent. per annum from March 15, 1939.

7. A judgment should be entered in accordance with the aforesaid conclusions of law.

### Judgment and Certificate of Probable Cause.

The foregoing case having been submitted to the Court, both parties having waived a trial by jury, and the Court having this day made and filed findings of fact and conclusions of law holding that a judgment should be entered in favor of the plaintiff;

Whereupon, it is considered, ordered and adjudged that the plaintiff, The First National Bank & Trust Company in Macon, as executor under the last will and testament of Mrs. Floretta Siesel Ulman (Mrs. E. Ulman), deceased, do have and recover of the defendant, Marion Allen, Collector of Internal Revenue, the sum of $5,750 principal, with interest thereon from March 15, 1939, at the rate of six per cent. per annum.

The Court hereby certified that there was probable and reasonable cause for the act of the defendant in collecting said taxes from the plaintiff and that he acted under the direction of the Secretary of the Treasury in demanding and collecting the same and that in the performance of his duties as Collector of Internal Revenue he paid the same over to the Secretary of the Treasury.

It is further ordered that the plaintiff do have and recover of the defendant $—— as costs.

### Stipulation of Parties (Pertinent Portions Only).

(3) On or about March 8, 1939, taxpayer filed her federal income tax return for 1938 with the Collector of Internal Revenue and disclosed thereon a net income of $2580.06, with the resultant tax liability of $52.88, which was paid on March 29 and June 13, 1939.

(4) Thereafter an investigation and audit of the tax liability of taxpayer was made, and as a result therefrom, Internal Revenue Agent Harold E. Smith, in a report dated September 28, 1943, recommended an additional income tax of $5751.88. This deficiency was due mainly to the inclusion in her taxable income of $35,000, based on the following facts and circumstances:

(a) Emanuel Ulman, husband of taxpayer, died testate on July 11, 1929. His will, being duly probated, after making provision for certain specific bequests, left the residue of his estate in trust, with the income therefrom to be used to pay decedent's brother, Louis Ulman, $125 per month for the rest of his life, the premiums upon a life insurance policy on his brother's life, and the balance to his widow, Floretta S. Ulman, the taxpayer here, for life, with the remainder to his nephew, George Berkenstein.

(b) In 1938 a dispute arose between taxpayer and George Berkenstein, the remainderman, as to who should bear the premium cost paid by the trustees in the purchase of securities. The remainderman contended that it should be paid out of income, while the life tenant contended to the contrary that it should be charged to corpus. The trustees applied to the state court for instructions, and while the controversy was under consideration and pending in such court, the taxpayer and the remainderman entered into an agreement which was incorporated in the decree of the state court. The provisions of the decree and agreement provided for and resulted in the taxpayer selling her entire interest in and to the trust estate to George Berkenstein, the remainderman, for $35,-000. The trust was thereupon terminated and the corpus turned over to the said Berkenstein.

(c) During the life of the trust, the taxpayer received therefrom taxable income as follows: 1929, $500; 1930, $2058.-09; 1931, $1900; 1932, $1050; 1933, $699.-47; 1934, $772.45; 1935, $1162.47; 1936, $950; 1937, $2738.38.

(d) The value of taxpayer's life estate on the date she acquired her right thereto was worth $34,136.92 under U. S. Treasury Regulations 105, Section 81.10.

(e) The property in which taxpayer had the life estate which she sold to the remainderman, consisted on the date of sale of securities, total valuation $123,789.83.

Upon the date of the conveyance from the life tenant to the remainderman, the value of the life estate of the life tenant in the trust estate, calculated on the basis of her age on that date, the age of Louis Ulman on the same date, upon the enhanced value of the estate assets on that date, and in accordance with the tables referred to above, was $35,060.89.

5. The taxes and interest sued for here resulted from the Commissioner of Internal Revenue's determination that the entire $35,000 received by taxpayer, as described above, was includible as ordinary gross income under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code § 22(a). On the contrary, it is the contention of the plaintiff that the $35,-000 was the purchase price of a capital asset, and that if any profit resulted therefrom, it was a capital gain and taxable as such.